## Dehlinger et ux. v. Graue.

(Decided April 24, 1931.)

GALVIN & TRACY for appellants.

MARTIN J. BROWN for appellee.

462

Opinion of the Court by Chief Justice Thomas—Reversing.

In October, 1928 (the day of the month being blank in the written contract), the appellee and plaintiff below, Frank Graue, entered into a written contract with appellants and defendants below, A. J. Dehlinger and wife, whereby defendants agreed to erect a described residence building according to attached plans and specifications, on a lot in Latonia, Ky., belonging to them, which residence and lot plaintiff agreed therein to purchase from them when the building was completed at the price of $12,000, paying cash at the time $1,500, and agreeing to pay a like sum on January 2, 1929, and the balance of $9,000 on May 1, 1929. There was no time fixed in the contract when the work was to commence or when it was to be completed, but defendants did begin it within a few days thereafter. The first two payments, aggregating $3,000, were made by plaintiff at the times agreed upon, but he never paid the balance of $9,000 on May 1, as agreed in the contract, or any part of it, nor has he since done so.

On April 1, 1930, plaintiff filed in the Kenton circuit court his petition in equity against defendants, wherein he alleged the contract as above recited, and that, after the building was completed, of which there is no complaint that it departed from the contract in any particular, defendants moved into and took possession of it, and that they had failed and still failed to comply with their agreement to convey the property and turn its possession over to him, although he had demanded that they do so. He filed with his petition a copy of the contract, and alleged "that by reason of the foregoing he is entitled to and hereby asserts a lien prior and subordinate (?) to all other liens against the premises herein described," and prayed judgment that defendants "either be required to deliver to him a free, unincumbered title in and to the premises herein referred to, or to return to him the sum of Three Thousand ($3,000.00) Dollars with interest thereon at the rate of six (6%) per cent., per annum from the —— day of October, 1928, and the 2nd day of January, 1929, respectively until paid; for a lien against the premises herein described to secure payment of said debt, interest and costs, and for all proper and equitable relief to him belonging."

The first paragraph of the answer was a complete traverse of all the material averments of the petition, except the execution of the contract and the completion of the building in accordance therewith and the taking of possession of the building by defendants were admitted, but the latter they excused by averring that plaintiff upon the completion of the building declined to pay the balance due on the contract or to accept it, and, to protect and preserve it from the ravages of vacancy, they temporarily moved into it, but that they were ready and willing at any time to turn it over to plaintiff upon his complying with his part of the contract. In another paragraph they affirmatively averred their compliance with the contract in every respect, and that they had tendered the premises to plaintiff, but that he refused to accept them, or to pay any part of the $9,000 balance due thereon, and, further, that, at the suggestion of plaintiff, during the progress of the construction, defendants had done extra work and used extra material, amounting in all to $782, which plaintiff owed them in addition to the balance of the purchase money.

In still another paragraph of the answer they alleged that, because plaintiff refused to pay on May 1, 1929, the $9,000 balance due on the purchase price, they were compelled to borrow $7,500 from a building and loan association and secured it by a mortgage on the property and upon which they paid certain interest. They made their answer a counterclaim against plaintiff, and sought judgment against him for the balance of the purchase price, the amount of extras and extra work, and the amount of interest they were compelled to pay, and asked that he now be required to assume that mortgage as a part of his indebtedness to them, and they prayed that plaintiff's petition be dismissed and that they recover judgment against him for the items set up in their counterclaim, and that the building and loan association be made a defendant and assert its mortgage lien, "and that plaintiff be required to assume and take over said mortgage obligation along with the title to the property aforesaid on the surrender to said plaintiff of the real estate described in the pleading, and defendants further pray for all proper relief."

Following pleadings made the issues, but without any motion therefor, or any motion to transfer the cause to the ordinary docket, the parties proceeded to trial

before a jury, and on the day the case was set for trial and before entering upon it, plaintiff tendered and filed an amended petition in which he abandoned a large part of his original petition, and averred in contradiction thereof that some time in the latter part of January, 1929, and before the building was completed, but considerably advanced, the parties orally agreed to rescind the contract, and that defendants "agreed to return to the plaintiff the sum of Three Thousand ($3,000.00) Dollars paid on account of said contract and agreed to cancel said contract; that thereafter plaintiff made demand upon defendant for said sum of money so paid, but that defendant has refused to pay said sum or any part thereof. Plaintiff withdraws so much of the allegations of his original petition as requested or demands the delivery to him of the property described therein." Only a judgment was sought therein against defendants for the $3,000 that plaintiff had paid to them. That pleading, as at once will be perceived, was a radical departure from the original petition, and it contained no explanation therefor, nor did it in any manner intimate, much less allege, that the averments of the original petition in contradiction of the amended petition were inserted in plaintiff's initial pleading by any oversight or by mistake. The amendment was appropriately controverted, and the parties went to trial before a jury. At the close of plaintiff's testimony, and at the close of all the testimony, defendants moved the court to direct a verdict in their favor, but each time it was overruled, and, under the instructions submitted by the court, the jury returned a verdict in favor of plaintiff for $3,000, upon which judgment was rendered, and, defendants' motion for a new trial having been overruled, they prosecute this appeal.

The only ground argued for a reversal of the judgment, although there were others contained in the motion for a new trial, is that the verdict of the jury is not sustained by the quantum of evidence required in the trial of an issue of this kind, i. e., subsequent parol rescission of a written contract, required by the law to be in writing, which is the precise issue involved in this case. It is strenuously insisted by learned counsel for defendants that the proof of the alleged subsequent parol cancellation or rescission in such cases "must be clear and convincing," and, if not so, the written contract should pre-

vail, and that the proof in this case is not of the required probative effect, and for which reason the judgment should be reversed. Counsel for plaintiff makes no effort to combat the rule of practice contended for by defendants' counsel, and which we are convinced is the correct rule in such cases.

That the foregoing is the correct rule where an enforced (adjudged) rescission or cancellation, because of fraud, misrepresentation, or other permissible reasons, is everywhere recognized, and that it is the universal rule of practice, is not and cannot be disputed. Some of our later cases so holding are, Larman v. Miller, 195 Ky. 654, 243 S. W. 939, Fields v. Walker, 200 Ky. 710, 255 S. W. 518, and Lossie v. Central Trust Co., 219 Ky. 1, 292 S. W. 338. But if it should be insisted that the same rule should not apply where a subsequent inter partes parol rescission was mutually agreed to by the parties and sought to be upheld, then the answer is that this court in the case of Davis v. Benedict, 4 S. W. 339, 340, 9 Ky. Law Rep. 200, had before it the precise question of a subsequent parol rescission of a written contract for the sale of land, and, in disposing of the question of practice now under consideration, we said: "The proof of such rescission by parol should be clear and convincing, and we think the testimony falls far short of producing such a conviction with reference to the alleged rescission in this case." The same question was again before this court in the case of Keeney v. Waters, 135 Ky. 525, 122 S. W. 837, and the ruling in the case of Davis v. Benedict was approved. Other cases from foreign jurisdictions to the same effect were cited in that opinion. The question, therefore, to be determined in this case is: Whether plaintiff sustained his contention of an alleged subsequent parol rescission of the contract of purchase by sufficient evidence under the rule, supra, prevailing in this jurisdiction?

Plaintiff, in giving his testimony as to the relied on rescission, said, in substance: That in the latter part of January, 1929, he went to the site of the building contracted for and found defendant, A. J. Dehlinger, who was himself a carpenter, and others at work on the building. That the walls were up, the rafters on, and a part of the sheeting was on, but none of the roofing, and that there was ice in the basement and a crack in some part of a brick wall, whereupon he said to Mr. Dehlinger

this: "I told him, I said 'Mister, I don't want the house'; he said 'I am very well satisfied, Mr. Graue, I will keep it and I will pay you six per cent. for your money how long that I got it.'" That later, and some time during the second week in February, he and a friend, one Mr. Fengmann, again visited the house one morning and found workmen engaged at work upon it, and, after remaining there about an hour without mentioning the subject whatever, he testified: "I asked Mr. Dehlinger if he make any different about paying the money; he says 'Well, no, he didn't make no different'; I says 'How is it?' and he says 'I can pay you the first part of May' and he said 'I am going to pay you.' Me and Mr. Fengmann went out."

On cross-examination he testified that Dehlinger said on that occasion, "I will try to pay it back the first of May," after which he and the witness he took along with him left, and that he never thereafter went back to the house. He, however, testified that "I saw him (defendant) in July—I asked him about that house, if he sell it; he say 'No, I didn't sell it yet.'" Plaintiff also testified that he never asked Dehlinger on the 1st of May, or at any other time, to pay him the $3,000 agreed to be done in the alleged parol rescission, if any such was ever entered into. He was asked:

"Q. How did it happen that you did not ask him for the money that you said he agreed to pay you on the first of May? A. Well, I didn't bother him—I was going to go to him but I thought it no use to bother him, that man aint got the money anyway, so I was just going to leave it to him."

Plaintiff later admitted in his testimony that he visited the house after it was finished and before defendant moved into it on a number of occasions, and another witness or two testified that he then referred to it as "his" house, and at least one witness testified that he told her, in substance, that the house was his and he wanted to sell it, and spoke to a real estate agent in her presence about selling it. But that real estate agent died before this action was filed, and of course defendants were deprived of the benefit of his testimony.

The witness, Fengmann, was introduced by plaintiff to substantiate the parol rescission relied on, and he testified that, on the occasion that he was present, plaintiff,

as he got ready to go home, asked defendant "for that money, told him he would like to have his money," and that "he (defendant) said he would try to as soon as possible, in May, try to make it." Witness also said that two of the workmen on the house were present at that time. On cross-examination, witness was asked and answered:

"Q. Now, tell us what the first thing was that Mr. Graue said to Mr. Dehlinger? A. Well, as good as I remember, Mr. Graue said to Mr. Dehlinger that he would like to have his money and he couldn't give him his money.

"Q. Did he say what money? A. Well, that is something I couldn't say.

"Q. You don't know? A. No, Sir.

"Q. Did he say what the money was for? A. Well, that is something I don't know—I didn't hear.

"Q. Didn't he say anything about what the money was for, or why he would like to have it? A. He said that he would like to have his money.

"Q. You mean to say that he called Mr. Dehlinger down and the only thing that you can remember that he said to Mr. Dehlinger was that he wanted his money? A. Yes, he would like to have his money, if he could pay him his money.

"Q. And do you remember anything else that Mr. Graue said to him? A. Well, he would like to have his money, so if he could make it in May he would like to have it.

"Q. Well, is there anything else that he said to him at that time? A. Not as I remember."

He later testified that he did not know what money was referred to, nor the amount of it, nor what it was for. Plaintiff and his witness, Fengmann, were the only ones who gave testimony to establish the alleged rescission.

It will be perceived that both of them testified in an exceedingly vague and greatly indefinite manner, and to transactions that, to say the least of it, occurred, if at all, in a most unusual way and a most uncommon manner. If there had been no other evidence introduced, the circumstances and facts bearing upon the issue of the parol rescission are such as to cast grave doubt upon

the testimony of plaintiff and his sole witness. To begin with, the parties had entered into a $12,000 transaction and $3,000 cash had been paid thereon, and the building contracted for was more than half completed before plaintiff expressed any sort of dissatisfaction. He never made complaint that the building was being constructed contrary to plans and specifications, and the presence of ice in the basement, and in perhaps other parts of the building in February, plus a slight crack in some parts of a wall, are the only reasons urged for a total rescission of the contract. If the building was damaged for either of such reasons, no request was made for defendants to correct it, nor is there any testimony that the correction could not have been made or that defendants would have declined to do so. Moreover, if the rescission had been made upon the terms contended for, i. e., the return to plaintiff of his $3,000 by May 1, it is peculiarly strange that he never demanded of defendants payment thereof until this suit was filed, and it will be remembered that Fengmann only testified, in substance, that defendant, A. J. Dehlinger, agreed to pay plaintiff some money but the amount of which he did not know, nor did he know the reason therefor.

Defendant, A. J. Dehlinger, testified that in the latter part of January, 1929 plaintiff did visit the place where the house was being constructed for the first time, and appeared to be mad, and stated that he did not want the house, but that he (defendant) sought to allay his anger, but that he never agreed to any rescission of the contract. On the contrary, he says: "I told him I knew he did want the house and that he was just angry because the roof was not put on." He expressly denied that Mr. Graue demanded a return to him of the $3,000 cash payments that had been made, or that witness ever agreed to restore that or any other amount to him. He denied that he ever agreed to return that money or pay plaintiff any interest on it for any time. He also testified that while plaintiff was there the foreman on the building, a Mr. Brandt, talked to him, and Brandt when introduced stated, in substance, that he heard no such conversation as plaintiff testified to between him and defendant, but, on the contrary he said:

"I asked him (plaintiff) what was the matter and then he told me he didn't want the house and I

says 'why' and from what I could understand was because it rained and the house got wet before we got the roof on it—I tried to tell him that building at that time of the year it was very seldom you could get the roof on before it got wet.

"Q. Well, had any damage been done to the house by the rain? A. Not any whatever."

The witness also testified that plaintiff revisited the house in May, 1929, and that he then heard no talk of a rescission.

The son of defendants was also at work on the house, and he disproved the parol rescission agreement relied on by plaintiff. However, it was testified to by defendant, and some of his witnesses, that plaintiff expressed a desire to get rid of the house, and asked defendant to sell it for him, which defendant promised to try, but never agreed for the written contract of sale between him and his wife and plaintiff to be rescinded or cancelled, and which is to some extent corroborated by plaintiff himself when he testified, as we have hereinbefore pointed out, that he asked defendant if he had succeeded in selling the house, and by the witnesses who testified that plaintiff was claiming to own the house after the date of the alleged rescission and was trying to procure a real estate agent, and also defendant, to sell it.

Moreover, we have scarcely met with a case where there was a more complete assumption of antagonistic positions by a litigant than is found in this case between the averments of the original petition and those contained in the amendment thereto. The one, which is verified by plaintiff, proceeds upon the theory that the written contract is still in full force and effect, and remedial relief based thereon was sought. The position assumed in the amended petition is in direct conflict therewith, and relief is sought based upon a wholly independent collateral and nullifying transaction. Indeed, it is doubtful if the amended petition is sufficient in its averments to entitle plaintiff to recover thereon, since it nowhere (except perhaps inferentially) averred that plaintiff agreed to the alleged cancellation and rescission, but only that defendant "agreed to cancel said contract." But, however that may be, such defect, if one, was not relied on in the trial court and was waived.

470

Under the rule supra we are constrained to the conclusion that plaintiff's vague and indefinite testimony, contradicted as it is by the circumstances of the case, and the positive testimony of defendants and their witnesses contradicting it, produced a failure of the proof to measure up to the required rule for setting aside of a solemnly executed contract pertaining to a subject-matter that the law requires to be in writing, and that the trial court should have so held and dismissed the petition. Defendants' pleadings were not framed with a view of obtaining the relief of specific performance, since no deed to plaintiff was tendered or offered to be tendered. Upon a return of the case defendants should be permitted to amend their pleadings if they desire with a view of obtaining such relief, and the rights of the parties should then be adjusted under the issues that might then be formed, including a judgment in favor of defendants for whatever balance might be found due upon the contract, and for extra work and material, with a lien upon the premises therefor, subject to credits that plaintiff may allege and prove, if any.

Wherefore the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.